**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DAVID L. MATHIS )
)
    Plaintiff, )  Civil Action No. 10-1399
)
  v. )
)  Chief Magistrate Judge Lenihan
COMMUNITY )
TRANSPORTATION, INC., and )
BILL BRUNTY )  Re: ECF No. 24
)
    Defendants. )

## <u>MEMORANDUM OPINION</u>

Presently before the Court is Defendants' Motion to Dismiss (ECF No. 24) Plaintiff's

Amended Complaint (ECF No. 21).  For the reasons discussed below, Defendants' Motion will

be granted, except that Plaintiff's state law claims will be dismissed without prejudice.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff David L. Mathis ("Mathis" or "Plaintiff") is an individual, proceeding pro se,

who filed an eleven-count complaint against Defendants Community Transportation, Inc.

("Comm Trans") and Bill Brunty ("Brunty") (collectively "Defendants"). (ECF Nos. 7 & 21.)[1]

Beginning in August of 2009, Plaintiff was hired as a driver by Comm Trans. (ECF No. 7 at ¶ 2.)

At this time, Plaintiff was informed by management that Defendant Brunty was in charge of

matters relating to payroll.  (ECF No. 7 at ¶ 2.)  In January of 2010, Plaintiff was arrested for

charges unrelated to his employment. (ECF No. 7 at ¶ 3.)

In March of 2010, Plaintiff's brother called Comm Trans about Plaintiff's missing

---

[1] Plaintiff adopted and incorporated by reference the facts averred in his original Complaint (ECF No. 7) into the Amended Complaint (ECF No. 21) without restatement.  Because the Plaintiff is pro se, the Court will permit Plaintiff's deviation from the general rule that an amended pleading supersedes the original pleading.  *See* 6 C. Wright & A. Miller, *Federal Practice & Procedure*, § 1476 (3d ed. 2010).

paycheck and tax forms and was informed by Brunty that Comm Trans had sent Plaintiff's final paycheck to Plaintiff's last known address.  (ECF No. 7 at ¶ 4.)

Plaintiff waited for more than a month for the check to arrive at his brother's home because he had his mail forwarded from his old address to his brother's address in Oregon.  (ECF No. 7 at ¶ 5.)  Thereafter, on April 26, 2010, Plaintiff sent Brunty a letter at Comm Trans' headquarters stating that he had not received his check, and that if his check had been sent to his previous address, it had not been received.  (ECF No. 7 at ¶ 5.)  Also, Plaintiff requested that Comm Trans issue a stop payment against the previous check and that it issue a new check; Plaintiff also requested that Comm Trans send the check to his brother's address.  (ECF No. 7 at ¶ 5.)  Plaintiff avers he received no reply.  (ECF No. 7 at ¶ 5.)  In early June of 2010, Plaintiff sent another letter to Brunty at Comm Trans similar to the previous letter. (ECF No. 7 at ¶ 6.) Plaintiff avers he did not receive a reply to this letter as well. (ECF No. 7 at ¶ 6.) [2]

Plaintiff seeks compensatory and punitive damages from Comm Trans and Brunty in his personal and official capacity, for the sum of $200,000 and $2,000,000 respectively. (ECF No. 21 at ¶¶ 14-16.)

Liberally construing the Plaintiff's Amended Complaint, Plaintiff's claims against Comm Trans and Brunty are found in Paragraphs 3– 3 of the Amended Complaint and aver as follows:

**Count I:** Comm Trans and Brunty knowingly and willfully conspired together to withhold the plaintiff's income tax statements in violation of 26 U.S.C. § 6501 and 26 U.S.C. § 7204. (ECF No. 21 at ¶ 3.)

**Count II:** Comm Trans knowingly and willfully withheld Plaintiff's income tax

---

[2] Defendants attached a letter from the Pennsylvania Department of Labor and Industry informing Comm Trans of the claim filed by Plaintiff under the Pennsylvania Wage Payment and Collection Law for non-payment of wages, and Defendants' response thereto. These submissions play no role in the Court's consideration of the Motion to Dismiss at bar so as not to convert this Motion to Dismiss into a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 12(d).

statements in violation of 26 U.S.C. § 6501 and 26 U.S.C. § 7204. (ECF No. 21 at ¶ 4.)

**Count III:** Bill Brunty knowingly and willfully withheld Plaintiff's income tax statements in violation of 26 U.S.C. § 6501 and 26 U.S.C. § 7204. (ECF No. 21 at ¶ 5.)

**Count IV:** Comm Trans and Brunty willfully and knowingly conspired together to unlawfully seize and withhold Plaintiff's payroll check. This seizure was a violation of the United States Constitution and the Fair Labor Standards Act, generally. (ECF No. 21 at ¶ 6.)

**Count V:** Comm Trans willfully and knowingly unlawfully seized and withheld Plaintiff's payroll check.  This seizure was a violation of the United States Constitution and the Fair Labor Standards Act, generally. (ECF No. 21 at ¶ 7.)

**Count VI:** Brunty willfully and knowingly unlawfully seized and withheld Plaintiff's payroll check. This seizure was a violation of the United States Constitution and the Fair Labor Standards Act, generally. (ECF No. 21 at ¶ 8.)

**Count VII:** Comm Trans and Brunty willfully and knowingly conspired to breach the company's contractual agreement to provide Plaintiff with income tax statements, other tax and employment related documentation and compensation for services rendered to and for the benefit of Comm Trans. (ECF No. 21 at ¶ 9.)

**Count VIII:** Comm Trans breached the company's contractual agreement to provide Plaintiff with income tax statements, other tax and employment related documentation and compensation for services rendered to and for the benefit of Comm Trans. (ECF No. 21 at ¶ 10.)

**Count IX:** Brunty breached the company's contractual agreement to provide Plaintiff with income tax statements, other tax and employment related documentation and

compensation for services rendered to and for the benefit of Comm Trans. (ECF No. 21 at ¶ 11.)

**Count X:** Comm Trans, through various scheduling and productivity measures, deprived Plaintiff of his lawfully allotted work breaks. (ECF No. 21 at ¶ 12.)

**Count XI:** Comm Trans knowingly and willfully subjected Plaintiff to a hazardous work environment where Plaintiff was required to engage in communications via a two-way radio, cellular phone and computer while operating a motor vehicle. These required operations jeopardized the life of Plaintiff and his passengers. (ECF No. 21 at ¶ 13.)

<u>LEGAL STANDARD</u>

PRO SE PLEADINGS

The Court must liberally construe the factual allegations of Plaintiff's Complaint because pro se pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Further, Federal Rule of Civil Procedure 8(e) requires that all pleadings be construed "so as to do justice." Fed. R. Civ. P. 8(e).

MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-

46 (1957)); *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1960 (May 18, 2009) (citing *Twombly*).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at

1949 (citing *Twombly*, 550 U.S. at 556).  The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement,"
> but it asks for more than a sheer possibility that a defendant has
> acted unlawfully.  Where a complaint pleads facts that are "merely
> consistent with" a defendant's liability, it "stops short of the line
> between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly* at 556-57).  The court of appeals expounded on this standard in its decision

in *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil

rights context), and the Supreme Court's recent decision in *Iqbal*:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations
> will no longer survive a motion to dismiss: "threadbare recitals of
> the elements of a cause of action, supported by mere conclusory
> statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. To prevent
> dismissal, all civil complaints must now set out "sufficient factual
> matter" to show that the claim is facially plausible. This then
> "allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged." *Id.* at 1948. The
> Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must
> show that the allegations of his or her complaints are plausible. *See
> Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  In light of *Iqbal*, the *Fowler*

court then set forth a two-prong test to be applied by the district courts in deciding motions to

dismiss for failure to state a claim.  First, the district court must accept all well-pleaded facts as

true and discard any legal conclusions contained in the complaint.  *Fowler,* 578 F.3d at 210-11

(citing *Iqbal,* 129 S. Ct. at 1949).  Next, the court must consider whether the facts alleged in the

Complaint sufficiently demonstrate that the plaintiff has a "plausible claim for relief."  *Id*. at 211

(citing *Iqbal,* 129 S. Ct. at 1950).  To survive a motion to dismiss, a complaint must show an

entitlement to relief through its facts.  *Id*. (citing *Phillips*, 515 F.3d at 234-35).  In applying this

plausibility standard, the reviewing court makes a context-specific inquiry, drawing on its

judicial experience and common sense. *Id.* (citing *Iqbal,* 129 S. Ct. at 1950).

     Courts generally consider only the allegations of the complaint, the attached exhibits, and

matters of public record in deciding motions to dismiss.  *Pension Benefit Guar. v. White Consol*.

*Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Factual allegations within documents described

or identified in the complaint may also be weighed if the plaintiff's claims are based upon those

documents.  *Id*.  (citations omitted).  A district court may consult those documents without

converting a motion to dismiss into a motion for summary judgment.  *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

<u>ANALYSIS</u>[3]

<u>Section 1983 Claims</u>

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or any other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.  To state a claim for relief under this provision, the Plaintiff must demonstrate

that the conduct in the complaint was committed by a person or entity acting under color of state

---

[33] In footnote to his Responsive Brief at ECF No. 28, Plaintiff alerts the Court that during a 40-day period of incarceration while at the Beaver County Jail, he was permitted use of the law library for only one (1) hour and 45 minutes, and that he filed a grievance concerning his limited access.  (Plaintiff's Response to Motion to Dismiss, ECF No. 28 at 3 n.2)  The Court acknowledges Plaintiff's concerns and reiterates that it liberally construes all of Plaintiff's submissions to this Court.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

law, and that such conduct deprived the Plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

    1.  <u>Conspiracy</u>

Defendants move to dismiss Counts I, IV, and VII as a matter of law because Comm Trans and its employee Brunty are incapable of conspiring pursuant to the intracorporate conspiracy doctrine. Plaintiff responds that the intracorporate conspiracy doctrine does not apply because Plaintiff sued Brunty in his personal and official capacities.

A civil conspiracy requires that two or more persons combine or enter an agreement to commit an unlawful act or to do an otherwise lawful act by unlawful means. *Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*, 801 F. Supp. 1450, 1458 (E.D. Pa. 1992) (citing *Burnside v. Abbott Lab.*, 504 A.2d 1329 (Pa. Super. Ct. 1985)). The intracorporate conspiracy doctrine states that a corporation is incapable of conspiring with its employees when they are acting within the scope of their employment. *Hefferman v. Hunter*, 189 F. 3d 405, 412 (3d Cir. 1999). "[W]here employees or agents for the corporation act within the scope of their employment or agency, the employees, the agents and the corporation are one and the same; there is no third party." *Rife v. Borough of Dauphin*, 625 F. Supp.2d 212, 222 (M.D. Pa. 2008). In *Hefferman*, the court analyzed the application of the intracorporate conspiracy doctrine and stated that a conspiracy between a corporation and an officer may exist only "if the officer is acting in a personal, as opposed to official capacity." *Id.* at 412. The intracorporate conspiracy doctrine does not protect

7

agents of a corporation from charges of conspiracy when the agent is acting outside of his official capacity or for personal reasons or gain.  *Id.* at 414.

Plaintiff alleges no facts to indicate that Defendant Brunty was acting outside of his official duties and scope of his employment or for personal gain.  As Brunty was acting within the scope of his position within Comm Trans, Brunty must be treated as one and the same with Comm Trans.  By treating Brunty and Comm Trans as one entity there can be no claim of conspiracy pursuant to the intracorporate conspiracy doctrine.

Plaintiff responds that the intracorporate conspiracy doctrine cannot apply to the facts at bar because Plaintiff has sued Brunty in his personal and official capacities; that is, Plaintiff argues that "[D]efendant was sued for his official conduct as well as his personal conduct." (Plaintiff's Response to Motion to Dismiss Amended Complaint, ECF No. 28 at 2.)  In *Hafer v. Melo*, the United States Supreme Court clarified the distinction between defendants named in their official capacities, and defendants named in their personal/individual capacities in actions filed pursuant to 42 U.S.C. § 1983.  502 U.S. 21, 27 (1991) (discussing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)).  When a plaintiff sues an individual defendant in his personal/individual capacity, a plaintiff seeks to impose personal liability upon the individual and recover from the personal assets of that defendant.  A defendant sued in his official capacity is really a suit against the entity that employs him, and hence, recovery will come from the entity.  *See id.*  Section 1983 liability does not turn on the capacity in which defendants acted in injuring a plaintiff, but on the capacity in which a defendant is sued.  *Id.*  Therefore, defendants sued in their personal/individual capacities may be held liable for actions taken while engaged in the official duties of their employment.  *See id.*  Consequently, the intracorporate conspiracy doctrine applies even though Brunty has been sued in his personal capacity, where the factual

averments of Plaintiff's Complaint and Amended Complaint indicate that Brunty was acting within the scope of his employment.

Further, Plaintiff has failed to sufficiently aver a § 1983 conspiracy per the requirements of *Twombly* and its progeny.  In order to make out a claim for conspiracy pursuant to 42 U.S.C. § 1983, a plaintiff must allege conspiracy with particularity even though a heightened pleading standard generally does not apply to civil rights actions against individual defendants.  *Bieros v. Nicola*, 860 F. Supp. 223, 225 (E.D. Pa. 1994) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)).  "To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose."  *See, e.g., Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166 (3d Cir. 1989), *abrogated on other grounds by Beck v. Prupis,* 529 U.S. 494 (2000).  Further, in light of *Twombly* and its progeny, there must be "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'"  *Great Western Mining & Mineral Co.,* 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).

In the instant action, Plaintiff has failed to allege any facts that plausibly suggest a meeting of the minds between Brunty and Comm Trans.  Plaintiff avers absolutely no facts regarding the period of the conspiracy, or any actions taken by defendants in furtherance of the conspiracy.  In fact, Plaintiff's only suggestion of conspiracy is that the defendants "willfully conspired together."  Yet, the complaint is devoid of any details supporting Plaintiff's conclusory averments.  Any attempt to amend would be futile based on the facts and circumstances as

averred by Plaintiff.[4]

Hence, Defendants' Motion to Dismiss Counts I, IV, and VII of the Amended Complaint will be granted.

2.   Fourth and Fourteenth Amendments to the United States Constitution

Plaintiff fails to assert a viable § 1983 claim for violation of the Fourth Amendment. The Fourth Amendment provides the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.[5]  This amendment protects against unreasonable "searches" and "seizures."  *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  The law is clear, however, that the protections afforded by the Fourth Amendment apply only to governmental intrusions.  *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *United States v. Janis*, 428 U.S. 433, 455-56, n.31 (1976); *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921) ("[The Fourth Amendment's] origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies . . . .").

Here, Plaintiff alleges no governmental participation in the alleged seizure of his property.  Consequently, Counts IV, V, and VI as they relate to Plaintiff's Fourth and Fourteenth Amendment claims for seizure of his property will be dismissed.  Any attempt to amend would be futile based on the facts and circumstances as averred by Plaintiff.

Plaintiff's claims for violation of 26 U.S.C. §§ 6051 & 7204

---

[4] The United States Court of Appeals for the Third Circuit in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim pursuant to Fed. R. Civ. P. 12(b)(6) in a civil rights case, it must sua sponte "permit a curative amendment unless such an amendment would be inequitable or futile."  515 F.3d 224, 245 (3d Cir. 2008).
[5] The ban on "unreasonable searches and seizures" found in the Fourth Amendment to the United States Constitution has been made applicable to the States by the Due Process Clause of the Fourteenth Amendment.  *Mapp v. Ohio*, 367 U.S. 643 (1961).

Plaintiff originally alleged violations of 26 U.S.C § 6501, titled "Limitations on Assessment and Collection," and § 7204, titled "Fraudulent Statement or Failure to Make Statement to Employees."  Construing Plaintiff's claim liberally on Counts I, II and III, the statutes that Plaintiff appears to invoke are 26 U.S.C. § 6051 and § 7204.  Plaintiff pleads with enough information to notify Defendants of the correct sections of the code. These sections, however, do not provide for a private cause of action. *Turner v. Unification Church*, 473 F. Supp. 367, 376 (D.R.I. 1978), *aff'd*, 602 F.2d 458 (1st Cir. 1979).  The *Turner* Court noted the following:

> The provisions enforcing § 6051 do not provide any civil remedy, explicitly or implicitly. Section 6674 imposes a fifty dollar fine (payable to the government) for failure to provide a statement of earnings as required by § 6051. The context of § 6674 reveals no intention to provide a civil remedy. Unlike its neighboring sections, which explicitly designate both criminal and civil penalties, § 6674 is conspicuously silent as to any civil cause of action. This legislative context strongly indicates that a civil remedy was not intended. Section 7204 is the criminal provision that makes it a misdemeanor to willfully fail to provide a statement of earnings. The language of § 7204 is very limited and clearly only contemplates criminal enforcement:
>
> > In lieu of any other penalty provided by law (except the penalty provided by § 6674), any person required under the provisions of § 6051 to furnish a statement . . . (will) be fined not more than $1000, or imprisoned not more than a year, or both.

*Turner*, 473 F.Supp. at 376 -77.  Clearly, there is no right of civil action based upon these sections.  Because § 6051 and § 7204 do not provide for a private cause of action, Plaintiff's claims in Count I, II and III will be dismissed pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim.  Any amendment would be futile as a matter of law.

11

Plaintiff's claim pursuant to the Fair Labor Standards Act

Plaintiff also attempts to make out a claim for violation of the Fair Labor Standards Act ("FLSA") in Counts IV, V, and VI.  The FLSA, 29 U.S.C. § 201 et seq., was enacted in 1938 and was designed "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage."  *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945), *quoted in Symczyk v. Genesis Healthcare Corp.*, No. 10-3178, 2011 WL 3835404, at *2 (3d Cir. August 31, 2011).  The FLSA has several objectives including the following: 1) to ensure a fixed, fair minimum wage and reasonable work week; and 2) premium payment for overtime.  *Brooks v. Vill. of Ridgefield Park*, 185 F.3d 130, 133-34 (3d Cir. 1999).

Here, Plaintiff avers that his brother spoke with Defendant Brunty after Plaintiff was arrested, and that Brunty told Plaintiff's brother that Plaintiff's check had been sent to his previous address.  (Complaint, ECF No. 7 at ¶ 4.)  Plaintiff also avers that the mail at his previous address had been forwarded to his brother's address in Oregon.  The facts as averred by Plaintiff, and all favorable inferences drawn therefrom, do not state a plausible claim for relief under the FLSA.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal* 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).  In making a context-specific inquiry, and drawing on the Court's judicial experience and common sense, Plaintiff's averments acknowledge that after his arrest, Plaintiff's mail was forwarded across the country to his brother's address in Oregon, and that it could take some time before his forwarded mail would actually be received by his brother in Oregon.  Plaintiff's averments also acknowledge that the check may have been lost when he requested that Defendants issue a stop payment order

12

against the original check.  These facts, as averred by Plaintiff, fail to state a plausible claim for

relief under the FLSA.  Consequently, Plaintiff's claims in Counts IV, V, and VI will be

dismissed.  Any attempt to amend would be futile.


Pendent State Law Claims

Counts VIII, IX, X, and XI are state law claims for breach of contract, deprivation of

work breaks, and negligence/intentional infliction of emotional distress/ exposing Plaintiff to

hazardous work environment.  In light of the dismissal of all federal claims, the remaining state

claims will be dismissed pursuant to 28 U.S.C. § 1367(c)(3).  A district court may decline to

exercise its supplemental jurisdiction over state law claims if "the district court has dismissed all

claims over which it has original jurisdiction . . . ."  28 U.S.C. § 1367(c)(3).  In interpreting this

provision, the United States Court of Appeals for the Third Circuit has indicated that "where the

claim over which the district court has original jurisdiction is dismissed before trial, the district

court must decline to decide the pendent state claims unless considerations of judicial economy,

convenience, and fairness to the parties provide an affirmative justification for doing so."

*Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir. 1995) (citing *Lovell Mfg. v.

Export-Import Bank of the United States*, 843 F.2d 725 (3d Cir. 1988) (other citation omitted)).

Here, there is no affirmative justification to retain jurisdiction over Plaintiff's state law claims,

and the Court declines to exercise supplemental jurisdiction over them.  Consequently,

Defendants' Motion to Dismiss Counts VIII, IX, X, and XI will be granted.  Plaintiff's state law

claims will be dismissed without prejudice, so that if Plaintiff so chooses (and he meets all

requirements), he may file his state law claims in state court.[6]

---

[6] Plaintiff may also seek relief in state court pursuant to the Pennsylvania Wage Payment and Collection Law.

CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss will be granted, except that Plaintiff's state law claims will be dismissed without prejudice.  An appropriate Order will follow.

s/Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge

October 28, 2011

cc:     David L. Mathis
        49049
        Allegheny County Jail
        950 Second Avenue
        Pittsburgh, PA  15219
        Pro Se

        All counsel of record
        via electronic filing